**GATEWAY, INC. and Gateway Companies, Inc.,**
Plaintiffs,

v.

**VITECH AMERICA, INC., Microtec Sistemas Ind. E. Com. S.A., William C. St. Laurent and Georges C. St. Laurent, Defendants.**

**No. 01 Civ. 2171(AKH).**

United States District Court,
S.D. New York.

June 1, 2001.

---

C. MacNeil Mitchell, Winston & Strawn, New York City, Eric W. Bloom, Winston & Strawn, Washington, DC, for plaintiffs.

Lisa Ann Cahill, Zuckerman Spaeder LLP, New York City, for defendants.

*MEMORANDUM AND ORDER DENY-ING MOTION TO DISMISS AND GRANTING IN PART AND DENY-ING IN PART MOTION TO TRANS-FER*

HELLERSTEIN, District Judge.

Gateway, Inc., a computer manufacturer, sought to enter the Brazilian market. It did so by negotiating contracts with Vitech America, Inc., a Florida corporation, Vitech's wholly-owned subsidiary, Microtec Sistemas Ind. E. Com. S.A., a Brazilian corporation, and two principals of Vitech and Microtec, William C. St. Laurent, a Florida resident, and Georges C. St. Laurent, III, a resident of Brazil.[1] Gateway, Inc. is a Delaware corporation whose headquarters are in San Diego, California, and Gateway Companies is a wholly-owned subsidiary of Gateway, Inc.

Gateway, Inc. and Gateway Companies, Inc. entered into four contracts with Vitech, Microtec, and the St. Laurents.

Gateway Companies lent a total of $41 million to Vitech by contracts dated September 16, 1999 and March 24, 2000, each guaranteed in part by the St. Laurents. Gateway, Inc. made two territorial rights agreements dated June 30, 2000 and October 13, 2000, the first with Microtec and the second with Vitech.

The business expectations of the parties were disappointed when necessary licenses from the appropriate Brazilian authorities were not forthcoming. Gateway demanded payment of its loans with interest, both of which were past due, and Vitech, Microtec and the St. Laurents resisted. When negotiations did not seem promising, Vitech, Microtec, and the St. Laurents filed suit in the United States District Court for the Southern District of Florida. Even before service of process in the Florida case, Gateway filed suit in this court, the United States District Court for the Southern District of New York. Vitech, Microtec, and the St. Laurents then filed this motion, for dismissal of the lawsuit against Microtec for lack of jurisdiction over its person and for transfer to the Southern District of Florida.

For the reasons discussed below, I grant the motion in part and deny the motion in part. My discussion begins with an analysis of the claims and the parties.

*The Loan Agreements and Guaranties*

Gateway Companies lent $41 million to Vitech in two payments, $31 million payable on or before March 16, 2001 under the agreement of September 16, 1999, and $10 million payable on or before March 24, 2001 under the agreement of March 24, 2000. Interest was to be payable quarterly at an annual rate of ten per cent and, at the option of Gateway Companies, the loan

1. In their motion papers, Plaintiffs identify Georges C. St. Laurent as a resident of Brazil, although the complaint in the parallel Florida case identifies him as a Florida resident.

was convertible to Vitech's common stock. Gateway Companies' loan was conditioned on various representations and undertakings of Vitech, including a representation that Vitech "shall have obtained any and all consents, permits and waivers necessary or appropriate for consummation of the transactions contemplated by each of the Loan Documents (except for such as may be properly obtained subsequent to the Closing)." (§ 6.02(d)). Vitech was granted the right, within 180 days from September 16, 1999, to acquire territorial rights from Gateway to become Gateway's exclusive reseller of its products in Brazil, and Gateway and Vitech agreed to negotiate a contract to accomplish that purpose according to principles stated in an annex to the agreement. (§ 2.07).

The loan agreements were to be "governed by, and construed . in accordance with," the law of New York (§ 10.09), and enforcement proceedings "may be brought in any state or federal court of competent jurisdiction in the State of New York." (§ 10.10). Vitech "irrevocably waive[d] any present and future objection to any such venue, and irrevocably consent[ed] and submit[ted] unconditionally to the non-exclusive jurisdiction ... in such court." Each agreement contained an integration clause, providing that it "constitutes the entire agreement between the parties with respect to the subject matter [t]hereof." (§ 10.12).[2]

By agreement of September 16, 1999, William C. St. Laurent and Georges C. St. Laurent, III jointly and severally guaranteed Vitech's loan obligation to the extent of $11 million. The agreement of guaranty contained provisions similar to the September 16, 1999 loan agreement as to New York being the governing law, as to the appropriateness of suit in the New York federal and state courts, and as to consent and waiver of objection to venue and jurisdiction. (§§ 10, 11). The Guaranty also provided for appointment of an agent for service of process in New York. (§ 10(b)).

### The Territorial Rights Agreement

Gateway, Inc. and Microtec entered into a Territorial Rights Agreement on June 30, 2000, pursuant to the relevant provision in the Gateway–Vitech loan agreement of September 16, 1999. Microtec's acquisition of intellectual property rights from Gateway was "subject to any government approval or registration that may be required." (§ 2(B)). If such approvals did not come to pass within a 120–day period, the territorial rights agreement was to become "null and void and all sums paid by [Microtec] to [Gateway] hereunder shall be refunded . . . ." (*Id.*). The fees required to be paid by Microtec to Gateway under the agreement were to be a royalty fee and a services fee measured by Microtec's gross revenue in excess of $200 million annually. (§ 3(A)-(C)).

Section 15(G) provided that the internal laws of Delaware would be the governing law, and that Gateway could sue Microtec "in any state or federal court of general jurisdiction in the United States having venue." Microtec agreed that it "irrevocably submits to the jurisdiction of such courts and waives any objection it may have to either the jurisdiction or venue of such court."

Delays in obtaining necessary approvals and registrations from the Brazilian authorities led Gateway and Vitech to enter into an interim territorial rights agreement of October 13, 2000. The interim

---

**2.** References are to the agreement of September 16, 1999. The agreement of March 24, 2000 has similar terms. *See* §§ 9.07–.08, 9

.10. Section 9.08(b) provides for the appointment of a New York agent for process, as did the guaranty agreements.

agreement was made to enable Gateway and Microtec to move forward, to allow Microtec to begin manufacturing and marketing Gateway-branded products in Brazil, and to provide for licensing by Gateway to Vitech of Gateway's trademarks to enable such manufacturing and marketing.

### The Florida Complaint

In Count I of their complaint against Gateway, Inc. in the Southern District of Florida, Vitech, Microtec, and the St. Laurents allege that Gateway fraudulently induced them into entering the contracts by misrepresenting that it had or would obtain the necessary trademark licenses and other regulatory approvals from the Brazilian authorities. The Vitech parties allege that Gateway repeatedly asserted that it had the Brazilian rights to various Gateway trademarks, that Gateway in fact lacked the rights to virtually all of the relevant trademarks, and that the Vitech parties would not have entered into the contracts had they known that Gateway lacked such rights. Further, the Territorial Rights Agreement required government approval or registration to be obtained within a certain time period; the Vitech parties allege that Gateway first rejected Vitech's proposal that Vitech handle the registration process, then failed to complete the registration itself within the allotted period. Count II repeats the same factual allegations and claims negligent misrepresentation. Count III alleges that Gateway charged Microtec above-market prices for product parts and components acquired from Gateway, in breach of the terms of the Territorial Rights Agreement.

### The New York Complaint

The complaint in this case involves essentially the same parties,[3] with a reversal of the roles of plaintiff and defendant. In Count I, Gateway, Inc. and Gateway Companies allege that Vitech has breached the loan agreements by failing to make required interest payments. Count II is a claim of anticipatory breach, in that Vitech allegedly stated its intention not to repay the principal amounts due on March 16, 2001 and March 24, 2001. Since the filing of the complaint, those dates have passed, allegedly without repayment. Counts III, IV and V allege that Microtec breached the Territorial Rights Agreement by failing to use commercially reasonable efforts to secure the necessary regulatory approvals from the Brazilian government within the allotted time period, and seek a declaratory judgment that the Territorial Rights Agreement with Microtec and the interim agreement with Vitech have become null and void by their terms. Count VI alleges that the St. Laurents have breached their September 16, 1999 guaranties by failing to repay the amounts guaranteed despite Vitech's breach.

### Defendants' Motion to Dismiss Microtec

Defendants argue that Microtec is not subject to jurisdiction in New York, neither having presence nor having engaged in activities in this State, and that a court in New York would not have proper venue. Gateway argues that Microtec, as a foreign corporation, is subject to the venue of any district court in the United States, see 28 U.S.C. § 1391(d). As to the issue of jurisdiction over the person of Microtec, Gateway argues, Microtec has consented to be sued "in any state or federal court of general jurisdiction in the United States having venue." See Territorial Rights Agreement, § 15(G). The issue requires me to interpret Section 15(G).

Gateway and Microtec acted purposefully in drafting the choice-of-law and choice-

---

**3.** Gateway Companies, Inc. is not named as a Defendant in the Florida action.

of-forum clauses in their Territorial Rights Agreement. The parties chose Delaware's substantive law, the law of Gateway's incorporation, to be the governing law of the contract, even though no incident of the negotiation or performance of the agreement occurred, or was contemplated to occur, in Delaware. The parties also chose Delaware law, even though they had chosen New York law to be the governing law of the two loan agreements between Gateway and Vitech, Microtec's parent company.

The same purposeful behavior is evident in the choice-of-forum clause. They opted, not for any preferred forum, neither New York (the preferred forum in the Gateway–Vitech loan agreements) or Florida or California (where the Territorial Rights Agreement was negotiated), but rather the broadest choice of forum: "any state or federal court of general jurisdiction in the United States having venue." The fair inference is that the clause was inserted to accommodate a lawsuit by Gateway, and was intended to eliminate the possibility of jurisdictional objection by Microtec. In that spirit, Section 15(G) went on to provide:

> Licensee [Microtec] irrevocably submits to the jurisdiction of such courts and waives any objection it may have to either the jurisdiction or venue of such court.

Gateway was also given the right to sue Microtec "before a competent court in the license area," that is in Brazil, the country of performance. *Id.*

■ The terms of the contract plainly establish that Microtec has waived any objection to the exercise of personal jurisdiction by this Court. Venue is proper pursuant to 28 U.S.C. § 1391(d). Accordingly, Defendants' motion to dismiss Microtec from the lawsuit in the Southern District of New York is denied.

### Defendants' Motion to Transfer

Defendants argue that because the action they filed in the United States District Court for the Southern District of Florida was filed first, and because a balance of the relevant factors weighs in favor of litigating these disputes in Florida, I should transfer the case before me to the Southern District of Florida. Gateway argues that, with respect to the two loan agreements it made with Vitech, the parties clearly intended that Gateway could sue in New York to enforce its agreements and recover repayment of the $41 million that it had lent, and that transfer of this part of the case to Florida would be inconsistent with that intent.

Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

I begin my analysis by comparing the suits in Florida and New York. The Florida lawsuit reflects a complaint by Vitech, Microtec, and the St. Laurents that Gateway failed to obtain necessary trademark registrations and regulatory approvals from the Brazilian authorities despite having represented that it would do so, and that it therefore fraudulently induced the Vitech parties into entering the contracts. The New York lawsuit essentially seeks repayment of Gateway's loans to Vitech; Gateway has sued Vitech as obligor and the St. Laurents as guarantors. Gateway also alleges claims against Microtec for not obtaining requisite licenses from Brazil, and thus breaching the Territorial Rights Agreement. Thus, there is substantial overlap but, as my discussion below makes clear, there is also severability with re-

spect to Gateway's suit to recover repayment of its loans to Vitech.

■■■ Generally, when a court is considering a motion to transfer one of two parallel lawsuits filed in different jurisdictions, the first-filed suit will be given priority. *See, e.g., Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir.1991). The considerations for doing so are those of "judicial administration and conservation of resources." *Id.* Under "special circumstances," however, the later-filed action may take precedence. *Id.* Such special circumstances include prevention of "forum shopping" as well as "this Court's policy to encourage the amicable settlement of disputes and to discourage needless litigation." *S & S Candies, Inc. v. Hershey Foods Corp.,* No. 00 Civ. 5243, 2000 WL 1425092 at *1 (S.D.N.Y. Sept.26, 2000) (citations omitted). Here, at the time that the Florida lawsuit was filed, the parties were involved in intensive discussions about their business relationship, discussions with the potential to resolve the disputes regarding the loans or the grant of territorial rights. Where the party filing first rushed to do so in the midst of negotiations to resolve the parties' disputes, the later-filed action often will be permitted to proceed in its chosen forum. *See, e.g., Riviera Trading Corp. v. Oakley, Inc.,* 944 F.Supp. 1150, 1158–59 (S.D.N.Y.1996).

The basic claim in the action before me is Gateway's claim for repayment. The parties to the two loan agreements, Gateway and Vitech, made it clear that New York was to be the preferred forum should Gateway wish to sue Vitech to obtain repayment. Indeed, both Vitech as obligor, and the St. Laurents as guarantors, appointed agents for service in New York, waived objections to jurisdiction by state and federal courts in New York, and provided that the loan agreements were the "entire agreement" between Gateway and

Vitech, and between Gateway and the St. Laurents as guarantors. By doing so, the parties agreed that Gateway could take advantage of New York public policy favoring the enforcement of loan agreements swiftly and according to their express terms. *See, e.g.,* N.Y. C.P.L.R. § 3213 (in action based on instrument for payment of money, allowing filing of motion for summary judgment in lieu of a complaint); *Schulz v. Barrows,* 94 N.Y.2d 624, 627–28, 709 N.Y.S.2d 148, 730 N.E.2d 946 (Ct.App. 2000) (Kaye, J.) ("The C.P.L.R. gives 'greater presumptive merit' to two categories of claims—actions based on instruments for the payment of money, and actions based on judgments—allowing them to be brought on by 'motion-action' for summary judgment, bypassing pleading, motion and discovery delays.").

■■■ Courts should enforce the agreements made by the parties, including the parties' express choices as to governing law and venue for suit. *See, e.g., Koob v. IDS Financial Servs., Inc.,* 629 N.Y.S.2d 426, 433, 213 A.D.2d 26 (N.Y.App.Div.1995) ("It is the policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation."); *Marine Midland Bank, N.A. v. United Missouri Bank, N.A.,* 223 A.D.2d 119, 643 N.Y.S.2d 528, 531 (N.Y.App.Div. 1996) (choice of law clause enforced unless "procured by fraud or where the issue is of such overriding concern to the public policy of [another] jurisdiction as to override the intent of the parties and the interest of this state in enforcing its own policies.") (citing *Restatement (Second) of Conflict of Laws* § 187[2](b)). Under New York law, courts will entertain suits where parties have contracted in favor of a New York forum, even if the parties have had few or minimum contacts with the state. *See, e.g., Ameritrust Co. Nat'l Assoc. v. Chanslor,* 803 F.Supp. 893, 896 (S.D.N.Y.1992).

*Cf. Atlantic Mutual Ins. Co. v. M/V Humacao,* No. 99 Civ. 10787, 2001 WL 434792 (S.D.N.Y. Apr.27, 2001) ("[W]hen parties choose a particular forum, their selection will be enforced without the need to engage in traditional personal jurisdiction analysis, including determining whether constitutional due process requirements have been met."). In a case where jurisdiction is founded on diversity, the federal courts should apply the law of the forum state—here, New York—as to such a matter of contract enforcement. *See, e.g., International Multifoods Corp. v. Commercial Union Ins. Co.,* 98 F.Supp.2d 498, 502 (S.D.N.Y.2000) (*citing Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)).

I will enforce the parties' choice of New York as an appropriate forum for litigation with regard to the loan agreements. This treatment will allow the Plaintiffs to ascertain, by motion under New York law, whether any factual issues stand in the way of summary judgment. If they do not, Plaintiffs may be able to establish that they are entitled to prompt relief, in the form of repayment of the loans. If, in contrast, Vitech and the St. Laurents are correct and factual issues are relevant, Gateway's action on the loan documents against Vitech and the St. Laurents will necessarily become bound up with the actions between those parties and Microtec under the Territorial Rights Agreement and Interim Agreement.

■ As I thus am suggesting, the issues with respect to the dispute between Gateway and Vitech and the St. Laurents on the Loan Documents and Guarantee are likely to be significantly different from those in the dispute between Gateway and Microtec arising from the Territorial Rights Agreement and Interim Agreement. The latter contain different jurisdiction and venue clauses. Microtec, not

Vitech, is the counter-party to Gateway, and the Gateway–Microtec Territorial Rights Agreement is likely to implicate different rights and defenses than the Gateway–Vitech loan agreements. Delaware law, not New York law, governs, and witnesses living in Florida, California and Brazil may have much more to contribute to the outcome than is the case with respect to the Loan Documents governed by New York law. The Territorial Rights Agreement, unlike the Loan Agreements, does not contain any special provision suggesting the New York courts as a favored place for suit. And nothing in the Gateway–Vitech Interim Territorial Agreement compels a contrary approach.

The different considerations reflected in these two sets of agreements—the loan agreements and the Territorial Rights Agreement and Interim Agreement—thus suggest different treatments. That part of the New York lawsuit that deals with Gateway's demand for repayment against Vitech and the St. Laurents is severable and should remain here, at least for an initial period to accomplish the procedure discussed above and in more detail below. That part of the New York lawsuit that deals with the parties' rights and obligations to obtain requisite licenses and authorizations from the Brazilian authorities, that is, the part that arises from the Territorial Rights Agreement and Interim Agreement, is indistinguishable from the issues in the Southern District of Florida, and should be transferred to the Southern District of Florida—for the convenience of witnesses, because of the presumption in favor of the first-filed case, and in the interests of justice. *See* 28 U.S.C. § 1404(a). Alternatively, and in accordance with statements made by Gateway's counsel at the argument, Gateway may dismiss these claims in this court without

prejudice to reinstatement by counterclaim in the Florida action and without costs.

As stated above, my reason for severing Gateway's claims for repayment under the Loan Agreements and Guaranty is to allow Gateway, Vitech and the St. Laurents the opportunity to test whether, under New York law, Gateway is, indeed, entitled to repayment free of the defenses that defendants seek to assert. The parties are entitled to raise these issues, and have them adjudicated, in the forum provided by their agreement. Accordingly:

- Gateway shall have 10 days from the date of this order to amend their complaint to state claims under the Loan Agreements only against Vitech, and under the Guaranty, against the St. Laurents, and if they choose, to dismiss without prejudice and without costs their claims under the Territorial Rights Agreement with Microtec and their Interim Agreement with Vitech;
- Defendants Vitech and the St. Laurents then shall have 10 days to file answers;
- Gateway shall have 20 days from the filing of the answers to file a motion for summary judgment for repayment and on the Guaranty, with opposition and reply papers to follow according to the Federal Rules of Civil Procedure.

### Conclusion

For the reasons stated above, Defendants' motion to dismiss the action against Microtec is denied; Defendants' motion to transfer to the United States District Court for the Southern District of Florida is granted only to the extent of the claims (a) against Microtec arising from the Territorial Rights Agreement between Gateway and Microtec, and (b) against Vitech arising from the Interim Agreement between Gateway and Vitech. The motion to transfer is denied as to the claims against

Vitech under the Loan Agreements and against the St. Laurents under the Guaranty.

SO ORDERED.